By the Court,
Robertson, J.
The defense set up by the , answer, in this case, is that the checks sued upon were obtained from the defendants, by one Sollinger and others, without consideration, and with a preconceived design on the part of the latter, to cheat the defendants out of the amount thereof. That they were intended to be advances of money, under an agreement entered into between Sollinger and such others, and the defendants, under representations on the part of the former, wholly false when made, and promises not intended to be, and not performed by them. That they were passed by Sollinger to Wheaton, who was interested in business with the plaintiff, and by him to the latter, without *75 the payment of any value, or parting with any consideration. That both Wheaton and the plaintiff knew the purposes for which such checks were given, and that they were diverted therefrom ; and that the plaintiff is not the lawful owner and holder of such checks, in manner and form, as alleged in the complaint.
This seems to be a defense, resting on the.fact that the checks were originally obtained, with a preconceived design of cheating the defendants out of the amount, and given as advances of money upon an agreement obtained by false representations, and promises not intended to be performed, rather than their being given or lent, originally, for a Special purpose, and afterwards fraudulently diverted. Indeed, no purpose is alleged in the answer, as that for which they were given ;■ nor is it alleged that they were diverted from the original purpose, whatever that might be, for which they were given. It is true, there is an allegation that the plaintiff and Wheaton knew the purposes for which they were- given, and that they were being diverted therefrom ;■ but that is not equivalent to a direct allegation of the purpose. The only purpose previously mentioned in the answer,- was that they were advances of money under an agreement.
The evidence in this case establishes that such checks were lent by the defendants to Sollinger, to enable him to buy cattle, upon an understanding that he would repay, with their hides and tallow, such loan and a small previous debt, and leave their feet to pay for the use of a slaughter house. At the time of lending them, Sollinger owed the plaintiff a much larger sum for cattle purchased a week previously, and on the day he obtained- such checks, he handed them and some money to Wheaton, to- be credited for the amount on such debt, at the same time promising to pay the residue on the same day. On that day, the checks and money were delivered by Wheaton to the plaintiff, and the payment of the former stopped by the defendants. There was no other evidence of a design by Sol-linger to cheat the defendants out of the checks, or of any other agreement under which they were advanced, or of false *76 representations or promises. Even if the purpose thus proved, for which such checks were lent, had been alleged as such in the answer, it may still- be a serious question how far it was one for a diversion of the checks, of which the defendants could complain. The rule, as laid down, is that a lender of accommodation paper has no right to complain of a diversion of it from any purpose in the accomplishment of which he has no legal interest. (Cases collected in 1 Abb. Dig. 466, pl. 461, title Bills, Notes and Checks.) The utmost benefit the defendants could expect from the application of the checks to the purchase of cattle, was subsequent repayment by their hides and tallow, if Sollinger chose to pay in that manner. He, of course, was bound to repay them, at all events. The rate, or price at which such hides and tallow were to be taken was not defined. The moment the cattle were bought and paid for, by such checks, the defendants became liable on them, whether they were ever repaid, either by hides and tallow, or otherwise. It is difficult, therefore, to see how the defendants had a legal interest in the purchase of the cattle, which was the purpose of the loan, since they became Sollinger’s property, and he could do what he pleased with them, unless that their possession furnished him with the means of paying by their hides and tallow. Checks, too, payable forthwith, do not seem to be a fair subject for the rule. The money could be drawn immediately, and applied by the borrower as he thought proper. They resemble a note lent to be discounted, which the borrower applies directly to paying a precedent debt. (Bank of Rutland, v. Buck, 5 Wend. 66. Grandin v. LeRoy, 2 Paige, 509.) The whole question here, in any event, would be whether the possibility of repayment to the lenders of the checks in question, by the hides and tallow of cattle bought by such checks, constituted such a legal interest of such lenders, in their exclusive appropriation to the purchase of cattle, as would make their diversion therefrom to paying a previous debt, fraudulent as regards the lenders. If so, it would remain so, notwithstanding Sollinger might buy cattle with other funds, and tender their hides and tallow in payment of *77 the loan. This case seems, however, to have been tried on the principle that a diversion from such a purpose was fraudulent, as regarded the defendants, and they are, therefore, entitled to the benefit of that rule on this appeal.
The learned judge, in his charge to the jury, perhaps somewhat guided by the allegation in the answer of an agreement in pursuance of which such checks were given, stated that they were business paper, in Sollinger’s hands, to be used by him, and not lent notes without consideration. This was correct, if they were a mere loan of money, to be repaid by hides and tallow of cattle to be purchased therewith, made on the faith of a promise of such repayment, and only erroneous if there was no personal advantage to be derived by the lender from such application. Of course, Sollinger never could have recovered on the checks, in any event; they were mere orders for money whose payment could be stopped ; and, of course, if he passed them away, the right would pass to another. I do not find the rest of the charge obnoxious to the severe criticism, into which the zeal of the defendants’ counsel has led him. The doctrine that testimony given with hesitation, and not positively, is not entitled to as much weight as that which is positive and direct, is undoubtedly true, when, all other things are equal. It is a mere truism to say that a witness ought to be believed, unless you have some reason to doubt his credibility. The learned judge submitted to the jury the question whether the plaintiff received such checks in part payment of what Sollinger owed him, without notice of fraud, they were good in his hands; which was all the defendants contended for.
On the trial an account or memorandum, entered in a book, which had been made by the plaintiff, was received in evidence on his behalf. It was headed “ August 6th, Sales of cattle, bought of McKee,” under which were made fourteen entries on as many lines, the third of which was “ 15 D. Sollinger, * * $715, $915.” Above and below the name of Sollinger, in a column, were names of other persons, and above and below the sum of $915, were in a column of other sums, opposite to *78 which were double crosses. The reception of such entries in evidence, was objected to, and an exception taken. A witness (Wheaton,) not the plaintiff, was asked -what the double crosses meant, and he testified that it meant such items were paid; to which question an exception was taken. He also testified that the figures “ $715,” in such third entry, were made by the plaintiff, when he received the checks in question. The learned judge instructed the jury “ that such entry did not affect the rights of the parties, in any way. These rights existed by their agreement, and the mere evidence of it in the book, did not vary the agreement.” I fully concur in the first part of such instruction, but do not see how an entry of $715, opposite $915, is evidence of any agreement. In fact, the whole account was a mere memorandum, kept by the plaintiff for his own benefit, of sales of cattle, in which he entered what he received. He could not make an agreement with himself, when Bollinger was not present to receive the checks in payment. The agreement, if ever made, was made when Bollinger delivered the checks to Wheaton, and by the latter received in payment, either absolutely or subject to the plaintiff’s approval. In the latter ease, the plaintiff, by receiving them, approved of the contract as made. A sum entered in a book is, by itself, no evidence of any agreement in regard to it. If the plaintiff had sued Bollinger, on his original debt, this entry wotild have been no evidence of payment. There is no explanation on the face of it, of the purpose of the entry. Entries made by the plaintiff, in his own handwriting, are not an evidence of indebtedness against another person. The question as to the meaning of a mark, put to a person who did not make it, is still more objectionable.
The admission of such entry was clearly erroneous, and of the testimony in reference to the marks in such account, still more so. The judgment must, therefore, be reversed, and a new trial had, with costs to abide the event.